May it please the Court, I'd like to reserve five minutes. Fine, I'm going to say the opposite of what I said to the other cases. I don't see why this needs to be a 20-minute argument, so if you could finish it earlier that would be good. Thank you. Understood. Honorable Counsel, the issue presented by this case is the focus upon the trial court's pertaining to the souvenir book. The Court found that it was a souvenir under the retail licensing agreement, as well as the trial court's rulings on the issue of copyright. This case involves a retrial of a case from 2015, as well as a retrial which took place during June 13th through June 17th of 2016. It relates back to conduct as far back as 1985 and 2000. It involves two friends, Mr. Bert Hansen, who is a legally blind person, an operator, and licensee under the Randolph-Shepard Act. He has worked at the Hoover Dam, which since 1975, as an operator. As a result of the ---- I'm sorry. I should have paid more attention when you introduced yourself. Because we have both sides appealing some things, who are you representing? Okay. I represent Mr. Bert Hansen. We have one appeal for Mr. Hansen from the verdicts, and then we have cross appeals on the issue of attorney's fees. Thank you. And so ---- So you're talking about the merits. I'm speaking about the merits. And the origin of a photo, which is located in Volume 3 of the record, and the photo is Volume 3, 140. It's a public domain photo, which creates the origin of the dispute and relates to a man by the name of Joe Kine, who was a high-scaler in the Black Canyon, which the Colorado River, which is where Hoover Dam was constructed between July 7th ---- We really do know the facts. Okay. Thank you. Let me ask you a specific question. Isn't it a fact that the defendant admitted ---- I want to talk about the book, the souvenir book. Isn't it a fact that the defendant admitted that that was a souvenir? And is the Court somehow in error and should disregard that if it's admitted by the defendant? No. That's not true. The Court ---- Mr. Hanson never admitted it was a souvenir. And the reason is, is because substantively, Version A, B, and C were identical. Version A was a hardback cover. Okay. Version B is a softback cover. Version C was a softback cover with an ad for the café. Right. And by virtue of the express license agreement, which is called the Retail Licensing Agreement, and the admission of an oral agreement by the plaintiff, Mr. Liguori, and he admitted that in Volume IV on June 13th, 2016, from pages 379 to 381. He admitted that the purpose of the creation of the image from the photo that I identified of Mr. Kine, the purpose was for the branding of the restaurant. Okay. But the issue that the directed verdict was on was whether the book was a souvenir. Correct. And my understanding is that you did not bring a Rule 50B motion to challenge the ---- that directed verdict. Am I right about that? You never filed a 50B motion? We did. That's wrong. Where is that in the record then? That would have been, we filed our Rule 50 motion in two places. I think you filed a 50A, but did you file a 50B? We did at, and that would have been in Volume VIII, and I believe it's around 930, I want to say that 924 to 933. We challenged the book as well as the copyright issue at that time. We filed a motion at the close of plaintiff's evidence, which would have been the Volume VI reference. That's the 50A. The 50A. So what about the close of the trial? And at the close of the trial, we filed, again, motions on the issue of the book. We filed motions on the ---- and there were counter-motions. In fact, what happened is the plaintiff made a motion saying the book should be determined to be a souvenir. We said it should be shown that it's not a souvenir and that we should be granted judgment on the pleadings, that there was no evidence of a breach of the contract relative to the souvenir. So there were counter-motions. The judge accepted the motion from the plaintiff and rejected our motion, and we filed our motion. So in the pages you just cited, they're talking about 50A. So I had the impression that there was no 50B motion, so this wasn't even properly before us, because we can't talk about a directed verdict for which there was no 50B. But maybe I'm wrong. Maybe it exists, but I don't see it on the pages you're talking about that are discussing the 50A. Okay. It was an intent to use all provisions of 50A and B. I do not believe we limited it solely to 50A. But you have to file another motion at the end of trial. Did you do that? We did not. Then I'm right. So I don't think we have this issue before us. So maybe it would be good to move on to a different one, because we can't consider an issue that is a challenge to a ---- if you haven't filed a 50B, we don't ---- we can't consider it, I think. I would disagree, but I understand the Court, the Court, Your Honor's decision. In regards to the issue on copyright, we challenged at every stage the Court's copyright decisions. We challenged it in Volume 3, 118, which would have been the motion for summary judgment on the eve of trial. Are you bringing up copyright to talk about the jury instruction? What are you talking about right now? We're talking about jury instruction. We're also talking about the motion of the denial of the directed verdict, because in Volume 1, Page 1 and 2, the Notice of Appeal under Item 3 specifically referenced all the judge's copyright decisions. In that case, we specifically referenced the Court's denial of our directed verdict under 50A. Oh, so you're not moving on from that. You're still talking about that. No, I'm talking about the copyright issue, because in this ---- in this case, there was no evidence. We had to ---- But so the directed verdict was on whether something is a souvenir. There's a copyright issue in the jury instructions on vicarious copyright infringement. Is that why you're talking about copyright right now? Yes. Okay. So what was wrong with the ---- what was wrong with the decision to not give that instruction? It was against the clear weight of the evidence, because there was no evidence showing any infringement. We had an ---- we have an express agreement ---- I don't understand that. We don't usually talk about instruction being against the weight of the evidence. The question is why should ---- my understanding is that the ---- there was no reliance on vicarious liability, and therefore, there didn't have to be an instruction. I understand that it was secured as ---- our appeal, under the Notice of Appeal, was we were appealing both the ---- I don't care what the Notice of Appeal is. I want to know why there should have been an instruction on vicarious liability. At the time, it was a tactical decision to seek some type of clarification because the Court had allowed the jury to hear evidence at the time as to certain evidence which the Court later decided after our motion was not evidence of infringement, because what happened is that ---- Kagan. So what is the problem with not giving ---- is the only issue here whether there should have been a vicarious liability instruction? No. That's not the question that we're addressing here? That's not the only issue on copyright infringement, Your Honor. Well, the other one you said had to do with cross motions, a motion for a directed verdict. But let's leave that aside for now. The ---- aside from the evidentiary question, the question is this vicarious liability instruction. Is that correct? That was one part of the question. What else is there? Go ahead. We additionally submit that there is the directive verdict that we requested on all copyright issues, direct or indirect, vicarious or contributory, that the Court erroneously denied our motion. I understand that. I ask you to put that aside for now. Okay. All right? As to the vicarious liability issue, why should there have been a vicarious liability instruction? We wanted that to highlight to the jury that the information that the Court had allowed the jury to hear, but, in fact, and that we had objected to, but after our motion, the Court had determined actually there was no proof of vicarious. By showing that, we could have highlighted to the jury so they could understand the differences between direct and indirect, and that the evidence that was submitted was even insufficient for purposes of the vicarious liability instruction. And does that cut against you? If he had given a vicarious liability instruction, you might have gotten a verdict based on vicarious liability. Instead, as I understand it, he said you can't have this evidence, you shouldn't consider this evidence of vicarious liability. But the evidence was already the bell had already been rung. But the jury found that it meant the finding by the jury was of direct liability. Yes, but there was no evidence of that. So how did the How did the But so maybe you should be arguing sufficiency of the evidence of that. But there was only a theory of direct liability. So why would anyone give an instruction on vicarious liability? We were trying to insulate and inoculate against the issue that all the evidence that was being allowed for direct liability was actually poor evidence, and the judge had considered inadequate evidence for indirect or contributory liability. And the purpose may not have been a tactical decision that everybody's made. We were simply trying to have the ability to argue to the judge, jury, not only do we have no direct liability, we also don't even have contributory liability. But since no one was arguing that you had vicarious liability, wouldn't that just have been distracting to the jury to give an instruction on a theory that no one was arguing you were guilty of? It could have been. Yes, Your Honor. All right. It seems to me that the really significant issues here have to do with fees. Do you want to talk about that or not? I'm sorry. Fees. It has to do with fees. The fees. Okay. I would like to speak to the fees. This is a case that originated in 2010, was dismissed for lack of prosecution, was refiled on April 1, 2011. It grew over the period of time to include 39 copyright violations, violations of fraud, breach of contract, and through the retrial, many of these theories were thrown out. But as a result, originally the plaintiff was requesting a $5.5 million verdict. By the time that it was retried, we were limited to a verdict of $46,000. So I understand your argument that you actually were the prevailing party. But say we disagree with you about that. Then your opponent has argued that not only were they the prevailing party, but they were wrongly denied all of the fees they should have been given. And in your brief, all I saw was a response, no, no, we were the prevailing party. Have you given any response to their argument that really they should have been given fees for the first trial because they didn't do anything wrong in the first trial? If that was in your brief, I didn't see it. So I'm wondering if you have a response. I have a response. One of the interesting things is there's $46,000 or $47,000 attributable to a firm called Holland and Hart, which was part of the case that was dismissed, that $47,000 was attributable. Sotomayor, I understand that we can start taking little pieces. But let's take the larger question right now of whether the entire ---- as I understand what the district court did, he started the fees from the ---- after the first trial was over. Is that true? That's what the judge appeared to explain in his order. All right. So let's just talk in generalities about whether anything from the period of ---- everything, because that's what I understood he did. It would be argued that the ---- everything from the beginning until the second trial should be excluded because ---- Well, you think you're the prevailing party, but put that aside. Say we disagree with you. Say they are the prevailing party. They're saying at the first trial we did a lot of work, and the judge didn't give us any fees for it, even though we're the prevailing party. What is your response to that, other than that they're not the prevailing party? Is there anything that you think they did wrong in the first trial that would justify not giving them any fees for pre-trial or trial of the first trial? Well, that's where I was trying to break it up and saying I can give you the component parts, and that's the reason why I believe that the judge made the correct decision of not giving them anything for the first trial. In the first trial, before the first trial, they hired an expert, and they put her on, and she wrote an expert report, and presumably they paid for it, and then she went on in the first trial, and then she ---- in the second trial, she came back. I understood you're complaining about that, but use the same theory and testify. Everything having to do with the expert before the day ---- before the end of the first trial just can't be charged? She made a second report, and she rebilled for the second report. If there's a minimal amount that ---- But the lawyers had to deal with her at the time of the first trial, and then they dealt with her at the time of the second trial. Presumably, they didn't have to repeat everything they'd done with her at the time of the first trial when they dealt with her at the time of the second trial. If we were able to parcel out the amount dealing with hypothetical ---- I guess there are two global questions here. One is, were there things that ---- there must have been things done before the end of the first trial that lessened the amount of work that had to be done in the second trial, because there was overlap. That's one question. Right. And the other is whether it was proper to preclude everything in the first trial because the judge thought that they had a stupid theory, although it wasn't thrown out. I mean, I gather the real issue is, was this theory that was ultimately disallowed ---- is there some way it should have been handled to have gotten it thrown out earlier so they didn't have to have the whole trial? And was the lawyers at fault for not doing that? Who was at fault for not doing that? Well, in truth, Your Honor, should they be rewarded for promoting a theory that was ultimately rejected? Because in the first ---- Well, the general answer to that is quite ---- is if they didn't ---- if it was a legal disagreement as to whether that was a proper theory and they properly presented it and they didn't sandbag anybody, probably so, or at least in part. We objected to it. But if they sandbagged people or did something improper or it was an outlandish, crazy theory or something like that, maybe you'd have a different view. Okay. We objected to it at every single point. All right. Their theory ---- Well, but then it's the judge's fault. If he objected to it at every point and he let it go forward, then why is it their fault? Because they promoted what I ---- if you hear what the theory was, he provided an image to a friend free of charge, which in other images, the client had paid $50. Okay. But the reason for the second trial was because of water bottles and snacks. The problem was that there was a damage request for water bottles and snacks, as I understand it. No. And that's what had to be redone. What the reason it had to be redone is the judge erroneously, and he believed it was erroneous, allowed evidence which allowed them to get a percentage of the overall sales of the business. But how could they then, if they were in good faith pursuing a theory, and you asked them, the judge, to not let them pursue the theory, and the judge did let them pursue the theory, why does that lead to the conclusion that they did something wrong in going forward with the first trial? Because ultimately, the judge determined that they're just ---- They lost. I understand they lost. But so what? People lose a lot of things in the course of a litigation. Because a large number of those fees were attributable to other issues that they never wanted or never pursued on. I mean, remember, there were 39 copyrights that they happened to try to pursue. Those were gone, you know, long before anybody spending time on them. But even so, maybe you're right about that. You can go back and argue with that with the judge. But just to take all of it out, what is the justification for taking all of it out? It would have to determine on what the judge considered was the prevailing party. He obviously ---- I mean, you're asking me to assume that they're the prevailing party for purposes of the first trial when the Court determined that they weren't. No, for purposes of the first trial. No, for overall of the case. By the end of the second trial, they're the prevailing party. Let's assume that. I know you've contested that. But if we assume by the end of the second trial, they are the prevailing party, then why shouldn't they get some payment for the work they did leading up to and at least some during the first trial? Because I believe the judge properly ---- if we were to assume for the argument's sake that the judge decided that there was some prevailing and he wanted to apportion what amount that he wanted to award, he recognized that they didn't prevail on all their claims even in the second trial. Okay. But so he could apportion for that, but instead what he did is say, I'm going to exclude the entire first trial, I gather, because he thought they'd engaged in some sort of misconduct. But it's not at all clear what that misconduct was or whether that makes any sense. Well, we don't have the complete reasoning of the judge whether he simply did it for simplicity's sake by saying, I'm going to give you nothing for the first trial and almost everything for the second trial, even though they did not prevail on any of the ---- on two of the three issues that they were pursuing even at the second trial. They didn't drop all their claims until the EV trial. They didn't ---- in fact, they didn't ---- they had three copyrights they were pursuing up until the close of evidence. And they didn't prevail on two of the three copyright claims. They only prevailed under ---- with the jury. And that may be a Hensley sort of prevailing party question about how to apportion the fees, but that's not what the district judge did. Anyway, your time is up, and I will give you a minute in rebuttal. Thank you. Good afternoon, Your Honors. My name is Michael Wall. May it please the Court, I represent Steve Liguori, the appellee, I'm not sure how we pronounce that. The issue in this case has been about the fact that a different case was tried the first time than was tried the second time, and no challenge was made to the theory of that first case until after the first case was over. Well, I gather there is some argument that it wasn't the theory of the first case. I mean, it wasn't in the complaint, and it wasn't really argued to the final, to the closing argument. Is that true or not? I'm sorry, Your Honor. I didn't understand. I thought that the contention or the judge's suggestion was that it wasn't really the theory of the first case, that in the first case, it wasn't in the complaint, and it wasn't really raised in the all the evidence was put on, it wasn't actually articulated as a theory until the closing argument in the first trial. Is that right or wrong? It was articulated throughout the first trial. What happened in the first trial was that Mr. Liguori's theory of the contract was that the branding of the store and everything that had to do with the branding of the store was covered by the contract. So his theory was that everything that was used, every way that that his artwork was used, he should be getting a royalty for that. And that's the way it was argued throughout the first case. So in the first case, it was not until closing argument that it became clear that everything in the store included, like, consumable items, water and snacks that might not be considered souvenirs. That's the point that I thought the judge got upset about. And did that not come out until closing argument, that it included all the food and snacks? That didn't come out until after the verdict and after the first judgment. It came out in the motions afterwards, and it actually came out from the judge because it wasn't in the motions. So the way that it was argued to be the way that it was argued to be the way that  there wasn't a limitation to souvenirs in the first trial. It wasn't limited to souvenirs until the second trial. In the first trial, the theory was every way that it was used. And so in the first trial, it was pleaded and argued to the jury in the alternative. That's why there were 39 copyrights before the first trial, not after the first trial, and they were only listed in a single claim of copyright, and it was an alternative claim. The reason it was pleaded that way and argued to the jury was if you find that there's a breach of contract, give us the damages for every misuse that there is under the under the contract, because it covers everything. And if you find that, as the trial counsel argued, then you won't find anything for a breach for infringement on the copyright, because that would be inconsistent, because we got everything but if. And if I were to what the theory. And did that relate to the use of the logo, essentially, that everything sold in that store was a breach of contract because it was using the logo? Right. And so that the argument was made in the alternative, and it was argued if you don't find there's a breach of the contract, then there's a breach, then there's an infringement on the copyrights. What happened is the jury returned a verdict, and the verdict was damages for breach of contract, $1.2 million, and also $150,000 for the infringement. And then there was a motion brought afterwards. Judgment was entered, motion brought, and the motion said those the verdict is inconsistent. You can't have both the way that it was pleaded. Then when Judge or Magistrate Judge Foley reviewed that, he said, yes, and this is where it first came in. He said, you've construed the contract too broadly, and the contract only covers souvenirs. So you can't have this, the verdict's inconsistent. Then he considered whether or not to not allow the damages for infringement, and that didn't work under the theories. And then he did the other one. That didn't work either. So he granted it a new trial. But he limited the new trial to souvenirs only. Now we have a very different case, because you can the we have a very limited license now. We're not arguing for a complete license. It's a limited license for souvenirs only. So if I use or if Mr. Hansen uses that limited license outside of the bounds of the limited license itself, that's an infringement of the copyright. And so you could have both damages for not having paid the royalties, and you could have infringement of the copyright outside of those damages that are available. And that's where the vicarious liability stuff comes up, because the theory, then, is the issues are related. Some of the proof for the breach of contract is also some of the proof that goes to the infringement of the copyright, but the damages are clearly separate. And the district judge or magistrate judge was very careful in instructing the jury correctly and keeping those two concepts separate. But what has happened in the briefs in this case of the appellant is that he mixes the concepts consistently. And so he wants to have he wants to be able to argue that there is no breach of the So if I had a license to use the artwork, there couldn't have been a copyright violation. But he had a limited license, and he argued throughout, and he argues throughout his brief that he has also an implied license. The issue of implied license went to the jury. The jury was completely instructed on the issue of implied license and was instructed that if you find there's an implied license, that's the end of the case. You can't award any damages. The jury returned two separate verdict forms, specifically finding there was no implied license. So throughout the opening brief, we see arguments, and they're always based on there's no evidence we didn't have an implied license. There was a ton of evidence there wasn't an implied license. The first time they started selling souvenirs together they said there was an implied license. Kagan, I'm really, why are we getting into this implied license problem? Why does it have to do with the current issues before us? It has the only thing it has to do with this is that the concepts have been mixed up. Fine. But what is the relevance to what we have to decide? There's no implied license. Fine. Okay. Because there was evidence that was presented. So is this why you should get more fees? I mean, we're asking, I think you're here to tell us that you should get more fees. We should get fees for the entire time. The reason we should get the fees. But what does that have to do with the implied license or lack thereof? Because if there was a limited license, there could be a violation of the copyright. And the argument that keeps being made is that there can't be damages and a violation of the copyright because we had this implied license. But does this have to go to whether you're actually the prevailing party? Like, say we agree with you that you're actually the prevailing party. Can you are the We prevailed on every claim. We had a copyright claim, and the copyright claim had multiple theories. Right. So say we agree with you. But we provide we all right. So could you talk about why you think you deserve fees for the first trial? Why that work was useful to your ultimate success? All of the work and all of most of the discovery and everything that had to do with the entire case was done before the first trial. And we didn't do anything wrong in that first trial. In fact, when the judge construed the statute and gave or, I mean, the contract and gave a new trial, he never suggested that there had been any misconduct or improper. So what did the attorney's fees award cut off everything until the end of the first trial? The attorney's fees that were awarded go from after the first trial to the end of the case. So everything having to do with discovery or the original complaint or any of that, you didn't get fees. That's right. And all of that discovery was useful to the second part, to the second trial. It had to be changed in some way. For example, expert Carroll had to take out of her report the damages numbers, and that's all she did. She took out the damages numbers that had been not allowed. Her methodology was the same. We had the very same problem. The real problem here was that one of the major breaches of the contract was that Mr. Hansen would not allow us to get the documents, even in discovery. Did you ever – was there a hearing before the district court about whether you should have fees from the first trial? Like, were you ever able to argue to the district court, look, I had to draft the complaint, the complaint was necessary to win the second trial, I should get at least my fees for that? I mean, did you ever have a discussion with the court about this? It was briefed to the court, but I don't believe there was a hearing on it. My memory of the record is that there was a stipulation to have it heard without it being heard. My understanding is that Judge Foley has retired. Is that right? I'm sorry? That Magistrate Judge Foley has retired. Is he retired? I believe so. So we'd have to start over with a different court? I don't know about that. All right. I know that he's one of the magistrate judges we've had for a very long time, but I don't know if he's retired or not retired. So, I mean, in the briefing, was it their idea that you shouldn't get anything until after the start of the — whose idea — when did it first come up that you wouldn't get fees until after the first trial was over? I think it was all addressed, but it was addressed in this — in their briefing, they said we prevailed, we prevailed, we prevailed. That was their argument. It has always been and it continues to be their argument. And we argued that we had prevailed. We argued for damages from the very beginning. We had never heard — it was in the decision itself, denying the damages was the first time that we heard from Judge Foley that trial counsel during the first trial had engaged in improper conduct. It was — it just didn't happen before. He had never suggested it before, and there was no improper conduct. There was — it was argued the way that it was presented. The theory was never questioned. It was never questioned until after the first judgment was entered to limit the theory of — under the contract as to what the damages could be. And at that point, you didn't seek reconsideration, saying, well, wait a second, even if you take out the first trial, we should get the money from drafting the complaint and doing discovery, because that clearly relates to the second trial. You didn't ever try to get him to change his mind. No. We had argued in our motion papers that we were entitled to it from the beginning. We had made the argument, all of the arguments, that even though there was a — there was a trial in the middle, the case started here. There was a misstep here, which nobody could have foreseen. The decision was — it wasn't even actually the issue that was addressed in the post-judgment motions. It was the way that Judge Foley dealt with the inconsistency in the verdicts was — Back for a minute and ask a question. Is there any point in our asking — in light of this argument, asking, suggesting a mediation between the two of you, or talking about money and nothing else, at least on the fees question rather than sending it back, doing more of this? Would you be willing to do that? We have very good mediators attached to the Ninth Circuit. They do a very good job. We could at least have you talk to them about whether there would be a point — it would be helpful to have some mediation sessions to settle all this. Yes. Yes? That would be okay with you? Yeah. I'm sorry. I don't understand exactly the question. Would it be helpful to mediate the issue of whether you're entitled to more fees? I think that — I mean, I haven't had any opportunity to discuss that with the client. I'm not sure that — I mean, their position has always been all or nothing in our position. I'm not sure that mediation would be helpful. Certainly, if it were suggested and, you know, we would — Because, see, the problem here is that with a district judge, the way he did it seems very questionable. On the other hand, there's a whole set of, you know, complicated attorneys' fees law, which once it's been determined who's the prevailing party, you then ordinarily — and I don't know whether this applies under Nevada law — look at the degree of success, which could take into account the fact that you ended up getting, you know, a pretty small amount of money on a pretty large amount of litigation. So there might be, you know, another way that your fees would be cut. So there's a lot — if we send it back, there's going to be at least a prospect for a lot more litigation about the fees, and maybe it would be nice to see if we could just cut this. Well, we believe that we presented the evidence that demonstrated both — we had two bases for getting our fees. We — under Nevada law, we prevailed on the contract issue, and we don't have the that was relied upon in California where you weigh it or anything. We prevailed on a significant issue, and the contract says we should get our reasonable fees. But Nevada law doesn't do that kind of weighing that California does, right? It doesn't preclude it. But, I mean, it's still in the discretion of the district judge. But the standard is that if you — if you prevailed on a significant issue in the case, that's the standard. Get your reasonable fees. But the question is, what's your reasonable fees? The question is, what's reasonable fees? But since we prevailed on the entire case and both halves of it involved the contract issues, and we would have had to bring it all at the same time, under Nevada law, we should have gotten that. Also, under Federal law, it's a matter of discretion to award fees to the prevailing party. And I think we definitely prevailed on all of the claims. And the judge made — And as with copyright issues. As to the copyright issues. As to the copyrights, yes, we prevailed on the copyright claim. The jury awarded us the maximum amount. And it was the amount that was sought. It says in the brief multiple times that we were seeking $5.5 million on copyright claims. It's not true. We never made that argument to a jury. We never made that argument anywhere. We asked the jury to give us — we went to the jury on the copyright claim and asked for the statutory damages, because on a case like this, it's difficult to prove actual damages, and you can go for statutory damages. And the jury was instructed that if it found there was a willful violation, it had to award damages between — I don't remember the bottom number and the top number is $150,000. And that's what it did. They did. The jury awarded $130,000. So we prevailed on that claim, even though we didn't go to the jury with different theories about violations of different copyrights. We went to the jury with a theory that the copyright had been violated. We prevailed at trial with evidence so that the judge concluded that that question should go to the jury. The question went to the jury, and the jury found in favor of Mr. Ligurio. That was the second time. The first jury found in favor of Mr. Ligurio as well, even though it didn't recognize that at that time it was — Kagan. Let me ask you a question. Isn't — isn't it a fact that the judge gave attorney's fees to the prevailing party, and isn't it a fact in the fees that he didn't give, he wrote an extensive explanation of why he felt that they weren't appropriate? I mean, he went — he went into a very — he examined everybody's position. He explained why he felt people were or were not entitled to attorney's fees, correct? That's correct. Okay. And he did that based on everything that was in front of him at the time, based on the pleadings. He felt that there were inconsistent pleadings, that the complaint and the way the complaint was worded and the way the case was tried were inconsistent. And so he went through all of that to explain why he didn't feel that — that you were entitled to fees in certain areas for the first trial, correct? That's correct. But then the basis for not awarding the fees for the first trial was very short, and there was only one reason for it. The only reason he gave was he said that the — presenting the theory the way that we did in the first case was unreasonable and was improper, and that had never been suggested before. That theory was the theory that was in the motions for summary judgment that were against which, which were denied, the case was allowed to go to trial. That theory was from the very beginning. It was argued at trial. It was argued to the jury at the trial. Nobody said that the theory was an improper theory or that it was improper to present it. And even later on, when the judge decided not to award the fees or to set aside the — and grant a new trial, never suggested that the theory had been improper. Was there an objection to the closing argument in the first trial on the basis that the theory argued was not a legally viable theory or anything else? The first — the theory at the first trial was that every — I want to know — I asked you a question. Was there an objection by your opponent at the time of the closing argument in the first trial? There were no objections in the first trial to any of the arguments that were made. The suggestion was never made that the theory that was being presented was an incorrect theory. That didn't happen until after the first trial was over. And at that point, there was no suggestion from anyone that there had been improper conduct on the part of any of the — on the part of plaintiff's attorneys. It was only after the second trial, and in the very, very final order, for the very first time, he said it was improper conduct on the part of counsel to have made the argument in the first trial regarding the — construing the contract differently. And we think that the contract can be construed differently. A decision was made not to pursue an appeal at that time because the contract is ambiguous, and it could be read the way that the judge did. And so we went forward with that. But there was no bad faith or improper conduct on the part of the plaintiff in presenting the case the first time. It just ended up that, based on the way the verdict came out and the way that Judge Foley then looked at the case, that it had to be tried again. All right. Do you have anything else? I have nothing further, Your Honor. Thank you, Your Honor. As a point of interest, a magistrate judge is retiring. I know. He hasn't retired. I understand that. So if he said he's back, he'd still be there. I understand that. And I just wanted to reemphasize — What about the mediation question? What about the mediation question? We have entered every mediation that's been requested and participated in good faith. Fine. That wasn't the question. The question is, is it worth another shot? It's always worth a shot. All right. Go ahead. Okay. And I'd like to emphasize the reason the copyright damages are incorrect, because the plaintiff in the trial said, did you have an understanding as to the branding of the store, which is what they allege the infringement was on? And he said it was sort of the same. Which trial? First trial or second trial? The second trial. Okay. Go ahead. And it's in the record at 381. And now what about the branding of the store? Was that part of the signed agreement? If that is something that happened, and he says if something happened that he wanted, okay. So was it more of an oral discussion, an oral agreement? Yes. He admitted there and multiple times that the branding of the store was licensed, and he didn't have the ability from which all the copyright damages flowed. As you've heard, counsel was arguing that they had the rights to breaches for the sale of souvenirs under the licensing agreement, and the licensing agreement, therefore, licensed the use. And he had the oral understanding when he gave him the image to brand the store. Yet somehow the jury found, based on some of the confusing evidence that came in, that there was an infringement. Yet how could there have been an infringement when the plaintiff, by his own words, says, yes, I gave it to him, and I authorized it for the branding of the store? Can you tell me which of the issues presented this pertains to? Excuse me? Which of the issues presented in your brief does this argument pertain to? It would be probably the third issue. About vicarious liability? Yes, where we were subsuming all copyright issues. Well, but not in the brief. You didn't brief this issue that you're now talking about, as I understand it. We did it in the reply brief as well. Well, you can't do that in a reply brief if you haven't raised the issue. And I'm looking at the four issues presented, and one was about the directed verdict on the book, and the next is about the damages expert, and the next is about the vicarious liability, and the next is about fees. Okay. Under the vicarious liability, you will note that we described and referred to the implied license agreement as precluding all copyright infringement. So we already did the issue. Is there anything else you want to say? Very fast. Okay. Very fast. As to the fee damages, there were many issues that the judge considered. For example, there were fees from a firm, from a prior litigation that were thrown in. I believe that if we ---- I know. But in the end, he took everything out before the second trial. Is that not true? That's what I understand. On the ground that there was improper conduct. That's what he said. Because despite what counsel, who was not there, said, we did object. And so it's not true that we didn't object to the theory. And there was an argument. I'm sorry. When did you object? We objected at the motion for summary judgment. We objected at the initial argument. And we objected to closing arguments. Okay. So then it's even worse, because if the judge didn't grant any of your objections, then what's the improper conduct about continuing to argue it? Because then afterwards, the Court said that was improper. He said it was. But what was improper about responding to an objection and winning? Responding to objection and winning and then having it reversed, he bought the ---- I understand the consideration. But the judge, at the end of the day, considered all the factors and used the methodology he could to figure out what he thought was fair if we assume that they were the prevailing party. Okay. Thank you both very much. The case of Liguori v. Hanson is submitted, and we are in recess. Thank you. Thank you.
judges: Berzon, Friedland, Cardone